In the Matter of 24–52 44TH STREET, LONG ISLAND CITY. (Guarantee No. 35909–2. Plan 3055.)

Supreme Court, Special Term, Kings County, February 19, 1941.

*Newman & Bisco* [*J. Weber App* of counsel], for the Manufacturers Trust Company, trustee.

*O'Malley & Wilson* [*George O. Lehmann* of counsel], for promulgating certificate holders.

BROWER, J. The Manufacturers Trust Company, acting as trustee for the benefit of the holders of participating interests in a certain bond and mortgage issued by the Greater New York Suffolk Title & Guaranty Company, applies herein for instructions and directions as to the proper disposition and treatment of the sum of $915 which has been paid to it by the Superintendent of Insurance, said payment having been made for such reason and purpose as will be disclosed hereinafter.

Although it may well be said that the instant application relates to matters which the trustee, with the advice of counsel, might properly be required to determine for itself in accordance with the suggestion given in *City Bank Farmers Trust Co.* v. *Smith* (263 N. Y. 292, 295 *et seq.*), nevertheless since the propositions

involved are of general interest to all trustees of certificated mortgages, the court will in consequence present its views thereon.

Sometime prior to December 10, 1934, the above-mentioned Guaranty Company issued and sold certificates evidencing participating interests in a bond and mortgage covering the premises located at 24–52 Forty-fourth street, Long Island City. Each of the certificates was guaranteed by the issuing company as to payment of interest at the rate of five and one-half per cent per annum upon the principal amount until the same should be wholly paid. The company also guaranteed payment of the principal sum as and when collected but in any event within eighteen months after written demand made subsequent to the maturity of the bond and mortgage.

It may here be stated parenthetically that since the issuance of present instructions will doubtless be given a more or less general application, in so far as they may generally appear relevant and proper for the future guidance of trustees in matters of this character, it will be immaterial to specify whether these particular certificates are to be construed as constituting an assignment of an undivided interest in the bond and mortgage accompanied by a guaranty of payment thereof, or whether as analogous to a note secured by the underlying bond and mortgage.

On December 10, 1934, pursuant to the provisions of article XI (now article 16) of the Insurance Law, an order was entered directing the Superintendent of Insurance to take over the Guaranty Company for purposes of rehabilitation. Thereafter, by order dated November 25, 1935, the liquidation of the company was ordered and the Superintendent was appointed liquidator thereof. Provision was also made for filing claims by certificate holders and other creditors of the company and for publication of notice with respect thereto, all as in said statute provided.

Subsequently, on September 22, 1937, an order was entered approving a plan of readjustment, etc., of the rights of the holders of certificates in the aforesaid bond and mortgage and appointing the Manufacturers Trust Company, petitioner herein, as trustee. On December 9, 1937, the latter executed a declaration of trust to which later I will more specifically refer. Upon the following day such trustee received from the Mortgage Commission the bond and mortgage in question together with the other documents, papers and property which constituted the trust estate. Prior to the time when it thus turned the trust estate over to the trustee, the Mortgage Commission had filed a proof of claim on behalf of the certificate holders with the Superintendent of Insurance in the liquidation proceeding. On March 24, 1938, the Mortgage

Commission assigned to the trustee all its rights, title and interest to the claim which it had thus filed with the Superintendent of Insurance. On February 15, 1940, in accordance with applicable provisions of the aforesaid article of the Insurance Law, an allowance by the Superintendent of Insurance in the sum of $4,575 upon said claim was approved by the court and the Superintendent was thereupon authorized to pay any dividends thereon " to the Trustee of the Series on behalf of all the certificate holders." The Superintendent has paid to the trustee liquidating dividends aggregating $915, or twenty per cent of the amount of the claim as allowed.

Instructions are now sought by the trustee as to whether the sum thus received should be applied on account of the principal amount due upon the outstanding certificates or on account of interest arrears at the guaranty rate, or whether it should be treated as wholly independent of the trust estate. The question is also raised whether the present holders of any particular certificates, who have acquired their interests therein by assignment subsequent to the date of the entry of the order of liquidation, are entitled to receive the *pro rata* share thereof allocable to such certificates, or whether, on the contrary, such arrears should be paid only to the holders of such certificates as of the date of the entry of that order.

In arriving at a proper determination upon these matters it may be desirable briefly to review the basic purpose sought to be achieved by enactment of the Schackno Act (Laws of 1933, chap. 745) and the Mortgage Commission Act (Laws of 1935, chap. 19), pursuant to the provisions of which guaranteed certificated bonds and mortgages are recognized. Prior to the enactment of these statutes, the underlying bonds and mortgages could not be administered or dealt with in any way without the unanimous consent of all the holders of certificates in each issue. In order to obviate this situation and in view of the existing emergency, the Legislature devised the above statutory scheme so that upon the consent of two-thirds of the certificate holders and the approval of the court, trustees might be appointed to represent one hundred per cent of the holders and deal with the bonds and mortgages on their behalf. (See *Matter of N. Y. Title & Mtge. Co. [Series F]*, 163 Misc. 37.) Thus provision is now made for the adoption of adequate plans for the permanent administration of the mortgages in which groups of investors are interested. (See *Matter of People [Title & Mtge. Guaranty Co.]*, 264 N. Y. 69, 92.) It, therefore, becomes immediately apparent that the statute did not contemplate that anything should pass to the trustee in connection with any given plan of reorganization except merely the underlying

bond and mortgage or other property securing the mortgage invest-ment, which the individual certificate holder could not deal with himself without the consent of the other persons interested with him. That such was the only result actually intended and accomplished in the reorganizations before this court may be graphically indicated by a consideration of the provisions of the declarations of trust which have been executed by the trustees in connection therewith. Thus it will be observed that pursuant thereto a trustee agrees to " take, hold, manage and control the property constituting the trust estate," which is defined as " the bond and mortgage (or the bonds and mortgages) against which were issued the mortgage certificates  *  *  *  and all property, real, personal or mixed, in any manner, and at any time or from time to time acquired on behalf of the certificate holders in lieu of or in addition to the bond and mortgage (or bonds and mortgages) aforesaid, together with all claims and choses in action which the certificate holders *as a class* have or may have against any person, firm or corporation with respect to any of the property now or formerly included in the trust estate." (Italics mine.) It will be further noted that nowhere in the instrument is there any specific duty or obligation imposed upon the trustee with respect to any claim against the guaranty company.

For the purpose of the present matter, it may be pointed out that here, in any event, each certificate is individually guaranteed to the holder thereof; there is no guaranty of payment of the principal and interest upon the underlying bond and mortgage. Suffice it at this time to say that the courts in the First Department have drawn a distinction between the effect thereof. (See *Matter of N. Y. Title & Mtge. Co.* [*Series F*], *supra*.)

It necessarily follows, therefore, that the claim must be deemed one which does not pass to the trustee and that the moneys which have now been paid do not constitute a part of the trust *res.* The fact that the Superintendent of Insurance, pursuant to the order of the court, paid the dividend to the trustee on behalf of the certificate holders is immaterial. This procedure was adopted for purposes of greater convenience only and, as such, has been expressly approved by the Appellate Division in the First Department. (*Matter of N. Y. Title & Mtge. Co., supra,* at p. 38.)

As stated above, the trustee also desires to be informed whether the moneys should be paid to such persons as will hold certificates at the time of distribution or, on the other hand, merely to such persons as were holders of the certificates as of the date of the order of liquidation. In other words, does the assignment by the holder of a certificate to a third person subsequent to the order of liqui-

dation constitute a divestiture of the original holder's right to payment upon the guaranty; or does such right remain with the original holder in spite of his subsequent assignment of the certificate? Upon this question I am of the opinion that where there has been such assignment, if executed without any express, pertinent reservation, the claim upon the guaranty follows the assignment. Subdivision 2 of section 514 (formerly section 404) of the Insurance Law may not be regarded as conflicting in any wise with this view since nothing in that provision expressly or by fair implication precludes the assignment after the entry of an order of liquidation, of a right which becomes choate and fixed as of such time.

It seems to me that the conclusion which I reach herein is obviously in accordance with the general rule that the assignment of a principal obligation carries with it all rights under guaranties and all rights to any security even though said rights are not referred to in the assignment itself. As is true of the construction to be placed upon any other instrument, an assignment is interpreted in the light of all the relevant circumstances. Significant importance, in my opinion, must, therefore, be given to the failure on the part of an assignor to reserve his rights against the guaranty company when assigning a certificate carrying on its face a guaranty of the payment of principal and interest. Such omission would certainly seem to presuppose a clear intention that all rights arising out of the indebtedness, as well as of the underlying security and collateral, should be embraced within the assignment. Support to such view seems amply given by the fact that the certificates themselves on their face expressly guarantee the payment of interest and principal " to such participant *or to any* other lawful holder thereof."

*Hendry* v. *Title Guarantee & Trust Co.* (255 App. Div. 497; affd., 280 N. Y. 740) might seem controlling authority contrary to the conclusion being reached herein. There, however, it will be observed that the cause of action, which the court held did not pass with the transfer of the certificates, was not predicated upon anything appearing on the face thereof, but depended upon an antecedent breach of trust the existence of which was not disclosed by an examination of the certificate and which was, in fact, even unknown to the parties to the transfer at the time of the assignment of the certificate. Furthermore, the court relied largely on *Hanna* v. *Florence Iron Co.* (222 N. Y. 290) and *Schaffer* v. *Vandewater & Company, Ltd.* (160 App. Div. 803), both of which cases were decided on the theory that under the facts and circumstances involved *it was not intended by the parties to transfer the rights of action for the previous breach.* As has been indicated above, I am

of the opinion that the plain language of the certificates in the instant case compels the conclusion that the parties to any assignment thereof, in the absence of an express reservation or other proof to the contrary, must be deemed to have intended the transfer of any and all rights arising upon the guaranty itself, and this conclusion seems to find ample support in cases relating generally to the assignment of a contractual right. (See *Craig* v. *Parkis*, 40 N. Y. 181; *Stillman* v. *Northrup*, 109 id. 473; *Waldron* v. *Willard*, 17 id. 466; *Sherman* v. *Elder*, 24 id. 381.)

The trustee will accordingly be instructed that it received the dividend upon the allowance as agent for the certificate holders; that the moneys do not constitute any part of the trust estate; and accordingly should be distributed to the present holders of the certificates other than certificate No. P-2925. The consequence of such holding necessarily imports that the Manufacturers Trust Company has received and will distribute the moneys in question *as agent* and not *as trustee*. Nevertheless, it will be entitled to a reasonable compensation for services and expenses as such agent. Under the circumstances here presented, I find such reasonable compensation to be in the sum of ten per cent. Submit order in accordance.