In re ADELPHI COLLEGE.

Application of GARDEN CITY BANK & TRUST CO.

No. 33814.

District Court, E. D. New York.

Jan. 26, 1943.

Hurd, Hamlin & Hubbell, of New York City (George L. Hubbell, Jr., and Renwick W. Hurry, both of New York City, of counsel), for Mortgage Trustee.

McLanahan, Merritt, Ingraham & Christy, of New York City (Henry A. Ingraham and Donald K. Miller, both of New York

City, of counsel), for Adelphi College, debtor.

Stein & Salant, of New York City, for Certificate Holders Committee.

BYERS, District Judge.

A perplexing problem has been presented to the Mortgage Trustee named in the Indenture hereinafter referred to, and the instructions of the Court were sought in a petition filed June 26, 1942, which has been amplified by supplemental and amendatory affidavits filed November 18, 1942, and January 15, 1943, respectively; these latter were required so that all relevant and attendant circumstances might be embodied in one record to facilitate review of the order to be entered hereunder.

. The matter requiring decision is this:

The proper distribution to be made by the said Trustee of the dividend paid by the Superintendent of Insurance of this state in connection with the liquidation of the Bond and Mortgage Guarantee Company, as to mortgage certificates guaranteed by that company representing participation in a first mortgage of the debtor, and which certificates were purchased by the Trustee for a so-called sinking fund, subsequent to the filing in the said liquidation proceedings of a proof of claim on June 11, 1938; on behalf of all then certificate holders, but which liquidating dividend was not paid until over four years thereafter, namely, during December of 1942.

The change in ownership of the certificates is what gives rise to the problem.

The mortgage, of which petitioner has become Trustee, was made by the debtor to Title Guarantee and Trust Company in the sum of One Million Dollars and participation certificates therein to the full amount were sold to the public by the mortgagee, and payment thereof as to principal and interest was guaranteed by said Bond and Mortgage Guarantee Company.

Default in the payment of the mortgage caused foreclosure proceedings to be instituted, and then the debtor came into this court for reorganization under the then Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and in consequence the foreclosure proceedings were restrained by order of this court. Thereafter and as provided in the plan of reorganization, the mortgage was transferred to Garden City Bank and Trust Company, as Mortgage Trustee, pursuant to an Indenture bearing date of May 25, 1938, which was modified by a Supplemental and Amendatory Indenture dated February 6, 1940.

It is not to be supposed that the foregoing were accomplished without the co-operation of the certificate holders, who were represented by a committee named in an order dated March 15, 1938.

The claim which was filed on June 11, 1938, in the liquidation proceeding, was on behalf of all certificate holders, as has been stated, and was based upon the guaranty of the Bond and Mortgage Guarantee Company; the said dividend paid in December of 1942 is at the rate of 6%, but whether it is final is not made to appear. Presumably it is to be regarded as a payment on account of the guarantor's indebtedness at the time of its insolvency, which comprised both principal and interest, but no one has suggested that it should be regarded as other than a sum received on account of principal due upon the mortgage indebtedness.

If the guarantor making such a payment had continued to be solvent, it would be subrogated to the rights of the mortgagee-certificate holders to the extent of such payment; the fortuitous event of insolvency merely renders the subrogation nugatory, but the fact remains that the mortgagee-certificate holders have received 6% on account of the mortgage indebtedness, and the mortgagor is relieved to that extent of its principal obligation.

The parties to this application are the Trustee, the debtor, and the certificate holders committee.

█ Distribution of the said liquidating dividend, so far as it pertains to the certificates which have been purchased by the Mortgage Trustee for the so-called sinking fund, can be made as follows:

(a) To the sinking fund, on the theory that such liquidating dividend pertained to the certificates purchased for that fund although the latter were cancelled as soon as they were purchased. This is the contention made by the debtor.

(b) To the remaining certificate holders. This is the contention of the certificate holders committee.

(c) To the certificate holders who were such when the Mortgage Trustee filed the claim on June 11, 1938, but who have since sold their certificates to the Mortgage Trustee as purchaser for the account of the

sinking fund. No one advances that contention, and unfortunately none of the prior certificate holders is represented by counsel on this motion, and it may be plausibly argued that their rights, if any, cannot be effectually disposed of unless by some procedural device they are made parties to this motion. That would be difficult but perhaps not impossible of accomplishment, but is thought not to be legally requisite, for the reason that, since the Mortgage Trustee acted for those certificate holders in filing the proof of claim, the filing by it of the petition of June 26, 1942, may be regarded as a continuing part of its representation of them, since the petition contains the following statement on their behalf:

"No certificate holders who have sold their certificates in sinking fund operations, have, so far as petitioner is aware, expressly reserved and withheld by the instrument assigning and transferring such certificate, any interest in or right to share in any payment realized on a claim against the Bond and Mortgage Guarantee Company, for unpaid interest and principal. Petitioner respectfully requests instructions as to whether such holders who have so transferred their certificates should be entitled to share in any distribution of the claim allowance."

It now becomes necessary to relate the underlying elements of the present controversy:

The Indenture under which the Mortgage Trustee was appointed to act, under the circumstances above referred to, makes clear that the debtor conveyed to the Mortgage Trustee the property subject to the first mortgage; and so as to enhance the security, it also executed a chattel mortgage to the Mortgage Trustee of personalty not covered by the original mortgage; and also conveyed other and additional properties which were thus subjected, for the first time, to the lien of the mortgage. The certificate holders were thus encouraged to consent to a reduction in the interest rate payable upon the mortgage, and it was found necessary through the instrumentality of the Amendatory Indenture to further reduce that item.

The Trust Estate is defined in the Indenture in Article I, paragraph (c), in which the following clause appears: "together with all claims or choses in action which the certificate holders as a class have or may have against any person,

firm or corporation, with respect to any of the property included in the Trust Estate of whatsoever nature (this clause will be commented upon later), and all assets of whatever nature and wheresoever situate, received by the Mortgage Trustee as to which the Mortgage Trustee is or shall become entitled pursuant to the provisions of said order of March 15, 1938, or of this Indenture".

The properties, not comprehended in either the original mortgage or the chattel mortgage, which were conveyed to the Mortgage Trustee, are described in Article III, and consist mainly of collateral which had been pledged in connection with collateral notes; as to those the Indenture contemplated the liquidation of said collateral and the application of the proceeds (in excess of amounts required for the repayment of the loans which were secured thereby) so that 75% would be employed by the Mortgage Trustee in the so-called sinking fund operation, and 25% would be assigned to the debtor.

What has been described as the sinking fund operation is defined in Article V following paragraph (o), in which it is provided that the funds last above referred to, and others not requiring present description, "shall be applied by the Mortgage Trustee from time to time, as soon as reasonably applicable after the receipt thereof, to the purchase and cancellation of mortgage certificates, at the lowest prices at which they shall be obtainable, and in any event at not more than the face value thereof, * * *. Upon the cancellation of any mortgage certificates in the manner above described, the principal amount of the bond and mortgage shall be reduced by an amount equal to the sum of the face amounts of the mortgage certificates so cancelled, plus the amount of interest which had accrued on such mortgage certificates prior to December 31, 1937".

The face value of mortgage certificates outstanding as of June 11, 1938, when the claim was filed in the liquidation proceedings was $1,088,307.30, the excess over One Million Dollars representing then accrued interest.

The face value of certificates purchased by the Mortgage Trustee for the so-called sinking fund between March 10, 1939, and June 30, 1942, was $159,750, and the prices paid varied from a low of 16% to a high of 50%, and certificates so acquired were

cancelled in obedience to the applicable provision of the Indenture.

As to the filing of the proof of claim, the original pending petition recites that, although the Mortgage Trustee on June 11, 1938, was uncertain whether there existed a claim to be asserted by the Trustee in behalf of all certificate holders, or a series of individual claims which could only be asserted by the respective certificate holders themselves, it took the precaution of filing a general proof of claim with the Superintendent of Insurance for the benefit of all certificate holders as of such date.

Apparently some certificate holders filed individual proofs of claim, and such as made inquiries of the Mortgage Trustee prior to September 30, 1938, the expiration date for filing, were informed that a general claim had been filed. On this subject, the recital is that the "Trustee did not at the time wish to take any position which might influence certificate holders to waive the right of filing separate claims".

There is nothing in the papers before the court to indicate that any certificate holder who sold his certificate to the Mortgage Trustee reserved his interest in the proof of claim; and also there is no evidence that any such certificate holder expressly conveyed or assigned his interest in that claim, apart from the inference arising from the sale, endorsement and delivery of the certificate itself.

It will be apparent that the distribution of the liquidating dividend in any of the three methods above specified can be criticized with reason, thus:

(a) If it be distributed to the sinking fund, on the theory that the assignment of the certificates necessarily embraced or included the assignor's interest in the proof of claim, objection can be made that the certificates were cancelled many months prior to the payment of the dividend; and since the latter accomplishes a reduction in the principal debt as has been seen, the certificates cannot be regarded as extant in December of 1942, so as to share in the benefit thereof; and also that there is a kind of dual mortgage reduction contemplated by awarding this dividend to those certificates, because while the 6% payment necessarily so reduces the principal debt yet it may again serve that purpose through the purchase of other certificates, and thus further reduce the interest charges against the debtor. That is not thought to be an impressive contention, because no present certificate holder is forced to sell; if all of them refuse, the sinking fund will just fail to accomplish its purpose.

With reference to the cancellation of the certificates, it is to be observed that the reduction in the mortgage debt had its inception in the act of purchase of the certificates, and the cancellation merely completed the process. That the certificates could not be further dealt with as securities possessing vitality was the clear purpose of this aspect of the Indenture and the agreement which it embodied, and so the act of cancellation possessed no real significance apart from its mechanical character.

(b) The objection to making a distribution of this dividend to the remaining certificate holders is more formidable. In the first place, the former certificate holders either sold and delivered their rights against the guarantor to the purchaser of their certificates, or they retained those rights in themselves. There is no theory which would justify the assertion that they sold their certificates to the Mortgage Trustee, and contemporaneously and by implication conveyed their claim against the guarantor, to the remaining certificate holders. I do not understand that Matter of 24-52 44th Street, Long Island City, 176 Misc. 249, 26 N.Y.S.2d 265, is to the contrary. The related element of that decision is that the claim in liquidation passed with the transfer of the certificates, and in this case the Mortgage Trustee would be regarded as the transferee and entitled to receive the dividend on the claim filed against the guarantor, notwithstanding the cancellation of the certificates so purchased.

The present certificate holders are receiving the 6% dividend on their own holdings and, since the mortgage debt has been reduced to that extent, the equity has been correspondingly increased, and they now have a more valuable security than they had before.

(c) A possible justification for awarding the dividend to the certificate holders who sold their certificates is that they did not in terms part with their interest in the proof of claim which their Mortgage Trustee had filed for them against the guarantor; and since in making the sale to it they were dealing with their own Trustee, the transaction should be construed straitly against the latter, and therefore a transfer

of interest in the claim may not be implied, in fairness to them.

The objection to that conclusion is that there was no specific retention of interest or participation in the claim as an incident to the endorsement, delivery and sale of the certificates, which may be viewed as some evidence that none was intended. That was the construction placed upon such sales in Matter of 24–52 44th Street, supra, but there the court was not dealing with a purchase made by a Trustee who was acting in part for the certificate holders themselves. Whether the line of cleavage so revealed requires a different determination here is not so clear as to foreclose misgiving either way. The point is troublesome, but I have come to the view that there is nothing inequitable in concluding that the former certificate holders probably intended not only to sell their certificates, but also all that pertained thereto, including their claim against the guarantor.

It thus results that to award the distribution to the so-called sinking fund, i. e., to the certificates purchased for it, is probably the best solution of the problem, and is not unduly favorable to the debtor when it is recalled that purchases for that fund were made possible by the debtor's providing, for the so-called sinking fund, assets and properties which were not covered by the original mortgage, to the end that a reduction in the mortgage debt might gradually be accomplished as an alternative to foreclosure, which would have been unprofitable to the mortgagor and mortgagee-certificate holders, alike.

A continuance of the operation of the sinking fund, through further purchases for it, will enhance the equity of the debtor and thereby fortify the values behind the outstanding certificates which continue to be held by those who invested in them.

The court is indebted to all counsel for the painstaking and thorough way in which this matter has been presented in the several briefs which have been submitted.

I do not see how the claim which was made by the Mortgage Trustee on behalf of the certificate holders can be regarded as part of the Trust Estate, within the provisions of Article I of the Trust Indenture. The Trust Estate was created by the debtor, not by the certificate holders. The Trustee was not appointed under the Schackno Act whereby two-thirds of similar certificate holders were deemed to be empowered to act for all. The inclusion in this Indenture of the quoted clause including all claims or choses in action of the certificate holders, as a class, seems to have been adopted from a Schackno proceeding, but in this case I do not see how it can be construed as evidence that the certificate holders did indeed convey to this Trustee their rights under the separate guaranty of the Bond and Mortgage Guarantee Company. If that is so, such rights were not a part of the instant Trust Estate and cannot be dealt with as though they were.

However, the Trustee should be reimbursed for disbursements made and counsel fee incurred in the presentation and settlement of the claim.

The order to be entered hereon should be settled, with an appropriate blank in which proper amounts can be inserted by the court. The Trustee should apply separately, on notice to the debtor and the certificate holders committee, stating the respective amounts which it suggests.

Settle order.