**PROPERTY ASSET MANAGEMENT, INC., Plaintiff–Appellant,**

v.

**CHICAGO TITLE INSURANCE CO., INC., Defendant–Appellee.**

**Docket No. 98–7701.**

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1999.

Decided April 12, 1999.

PAMI is not a proper party to assert a claim under that policy. We agree and affirm.

## BACKGROUND

The events giving rise to this litigation began in June 1989, when Midlantic Bank ("Midlantic") made a loan to the Saul Muchnick Irrevocable Trust ("Muchnick") for the purpose of financing the construction of an office complex on a piece of property in Oyster Bay, N.Y. known as "Lot 27." In partial compensation for its loan, Midlantic obtained a mortgage lien on the lot. Midlantic also secured a commitment from Chicago to research and insure Muchnick's title to Lot 27. On October 2, 1989, Chicago issued a title policy on the mortgage loan, with Midlantic as the designated beneficiary.

In March 1992, Midlantic brought a foreclosure action on the mortgage in the Supreme Court of Nassau County, New York. Judgment of foreclosure and sale was entered in November 1993, and the property was sold at public auction in June 1994.

On May 6, 1994, Midlantic agreed to sell a package of loans to Lehman Brothers, and in an agreement dated June 9, 1994, Midlantic assigned the Lot 27 mortgage loan to a subsidiary of Lehman called ALI, Inc. The assignment was stated to be effective June 8, the day before the agreement was executed.

June 8 was also the date of the public auction of Lot 27. The successful buyer was Midlantic. Midlantic subsequently assigned its rights in its purchase of Lot 27 to PAMI, the present plaintiff. That assignment was made on September 28, 1994, and title to Lot 27 was transferred by deed to PAMI on December 2, 1994. Thus, Midlantic had conveyed Lot 27 and Muchnick's mortgage debt thereon to two Lehman subsidiaries, the former to PAMI and the latter to ALI.

On June 23, 1995, the Supreme Court of Nassau County granted a deficiency judg-

Aaron R. Cahn, Olshan Grundman Frome Rosenzweig & Wolosky, New York, NY, for Plaintiff–Appellant.

Samuel Kirschenbaum, Kirschenbaum & Kirschenbaum, P.C., Garden City, NY, for Defendant–Appellee.

Before: NEWMAN, WALKER, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge.

Property Asset Management, Inc. ("PAMI") is a wholly-owned subsidiary of Lehman Brothers. In this diversity action, PAMI seeks to sue Chicago Title Insurance Co. ("Chicago") on a title insurance policy that Chicago issued. Chicago argues, and the court below found, that

ment for the outstanding amount of the mortgage loan. The named plaintiff in that action, in whose favor the judgment was entered, was PAMI. That fact is curious, inasmuch as Midlantic had assigned the Lot 27 *loan* not to PAMI but to ALI and, as of the date of the deficiency judgment, there had been no formal assignment of that debt from ALI to anyone else. Nevertheless, the order granting the deficiency judgment specifically stated that it was substituting PAMI as the plaintiff in the pending action. In fact, it was not for ALI—the actual owner of the loan—that PAMI was substituted by the court order. Instead, that order purported to substitute PAMI for Midlantic, as if Midlantic had still been the loan's owner. (Midlantic had, as noted above, assigned the loan to ALI two weeks earlier.)

On August 7, 1995, ALI sought to assign the mortgage loan on Lot 27 to PAMI in a document back-dated to June 8, 1994, the same day (a) that Midlantic had assigned the loan to ALI and (b) that Midlantic had bought Lot 27 at public auction. August 7 was, of course, several weeks after the deficiency judgment was entered.

Meanwhile, PAMI had notified Chicago on May 30, 1995, that it had a claim under the title insurance policy. Chicago denied the claim. A 339. Then, on February 29, 1996, PAMI filed suit against Chicago in the United States District Court for the Eastern District of New York (Hurley, *J.*), seeking damages on a breach-of-contract theory.[1] Both parties moved for summary judgment.

PAMI's suit relied on the theory that PAMI could make claims under the policy as the assignee of ALI, which in turn was the assignee of Midlantic, to whom the policy had originally been issued. Chicago argued that PAMI was not a valid assignee. Once the deficiency judgment was granted, Chicago maintained, the debt under the mortgage loan had ceased to exist. After that point, no one could become an owner of the indebtedness or of the loan

on which the title insurance policy had been issued. It follows, on this view, that PAMI could not have become the owner of the loan and the beneficiary of the title insurance after June 23, 1995, the date of the deficiency judgment. Chicago further argued that PAMI could not avoid this problem—as it attempts to do—by back-dating the assignment of the loan to June 8, 1994.

On March 31, 1998, the district court issued an opinion granting summary judgment in favor of Chicago. Judge Hurley noted that the back-dated assignment could not be effective under New York law unless PAMI had actually been the holder of the debt interest as of June 8, 1994, and he found no indication that PAMI had in fact held the debt.

PAMI now appeals, arguing that it is a proper assignee of the right to enforce the insurance policy.

## DISCUSSION

■ We review a grant of summary judgment *de novo*, with all inferences drawn in favor of the nonmoving party. *See Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir.1998).

PAMI cannot assert a claim on the insurance policy as the assignee of ALI and Midlantic unless an assignment was validly made prior to the entry of the deficiency judgment on June 23, 1995. Entry of the deficiency judgment terminated the mortgage loan, and it was on that loan that the title insurance policy was issued. Once the mortgage loan went out of existence, the holder of that loan—whoever that might be—no longer had an interest in the policy to assign.

The only formal assignment of the loan from ALI (or anyone else) to PAMI was executed on August 7, 1995, several weeks after the deficiency judgment was entered. Whether PAMI can be an assignee of the right to enforce the insurance policy there-

---

1. PAMI also advanced a negligence theory which is no longer at issue in the case.

fore turns on the validity *vel non* of back-dating that assignment to June 8, 1994.

## A. Unmanifested intent

 PAMI argues that the parties to the assignment always meant to have PAMI receive all the rights related to Lot 27, including the right to enforce the title insurance policy. Two officers of ALI who were also officers of PAMI testified in affidavits that there had been an intention all along to assign the loan to PAMI. These affidavits, however, express only the uncommunicated subjective understandings of the officers. There is no evidence, and PAMI does not claim, that the intent to assign the loan to PAMI was memorialized in a written instrument before August 7, 1995. Under New York contract law, "[u]ncommunicated subjective intent alone cannot create an issue of fact where otherwise there is none." *Wells v. Shearson Lehman/American Exp., Inc.*, 72 N.Y.2d 11, 24, 530 N.Y.S.2d 517, 524, 526 N.E.2d 8 (1988). Thus, although no particular formula is needed to create an assignment under New York law, there is a need for some "act or words" that manifest an intent to assign. *Miller v. Wells Fargo Bank Intern. Corp.*, 540 F.2d 548, 557 (2d Cir.1976).[2]

The reason for not permitting assignments based on unmemorialized intentions is especially strong in cases like this one, where the putative assignor and assignee are sister corporations. If intent alone were enough to assign, and to do so retroactively, then the holder of a contract could choose at will which of its corporate personalities would be the beneficiary of any given contract on any given day. This could be accomplished simply by adducing insider officers' testimony that they had meant to assign the contract from its nominal holder to the appropriate corporate shell before the relevant date. We do not suggest that the Lehman corporations in the present case had any sinister design in mind. But even if we assume that the present plaintiff had no manipulative motive, it is easy to see how recognizing unrecorded assignments based on retrospective testimony about intent alone would, in many cases, permit the unfair manipulation of contract rights.

## B. The deficiency judgment

The district court held, and PAMI does not dispute, that the back-dated assignment is valid under New York law only if PAMI was actually in exclusive control of the mortgage loan interest between the purported assignment date and the date on which the assignment document was executed. The only objective evidence that might suggest that PAMI was in such control of the loan interest during that time stems from the deficiency judgment entered for the outstanding balance of that loan on June 23, 1995. The order granting that judgment specifically amended the caption of the case, substituting PAMI for Midlantic as the plaintiff. If PAMI was the party that sought and received a deficiency judgment for the balance of the loan, it might be inferred that PAMI was the owner of the loan at that time.

The district court declined to consider the import of the deficiency judgment on the ground that PAMI had not based any argument to the court on that decree. On appeal, PAMI raised this issue only in a single sentence in its brief. Were we to deem the question waived, the assignment would fail for lack of corroborating evidence.

At oral argument on appeal, this court *sua sponte* asked PAMI whether the issue of the deficiency judgment as an indicator of PAMI's control had been waived. In

2. PAMI cites a district court case, *Caribe Carriers, Ltd. v. C.E. Heath & Co.*, 784 F.Supp. 1119, 1125–26 (S.D.N.Y.1992), for the proposition that an affidavit of an official of a parent company, explaining the relationship between two subsidiaries, can, when coupled with a later written ratification, be enough to create an assignment of an insurance policy from one subsidiary to the other. But *Caribe Carriers* decided the assignment issue under admiralty law, not under the law of New York. *See id.* at 1120.

response, PAMI challenged the district court's statement that the point had not been raised below and represented that PAMI had, in fact, argued the matter of the deficiency judgment to the district court. We asked PAMI to supply this court with any documents submitted below in which the issue had been raised. Our review of the full set of documents reveals that only in a single sentence did PAMI mention to the district court that it was the beneficiary of the deficiency judgment. That sentence (which appears in PAMI's brief in opposition to Chicago's motion for summary judgment and in support of PAMI's own cross-motion for partial summary judgment) merely states that "a deficiency judgment was eventually entered in PAMI's favor, since PAMI was substituted into the foreclosure action." The brief contains no argument explaining how PAMI came to be the plaintiff in that action or what legal significance PAMI's having been named in the caption of that case has for the question of whether PAMI exercised exclusive control over the mortgage loan interest. Accordingly, the district court was correct to say that arguments based on the deficiency judgment were not adequately raised in that forum.

Moreover, even if we were to entertain arguments based on the deficiency judgment, we do not believe that the circumstances of that judgment lend clear support to PAMI's theory of the assignment. There is an important respect in which the story PAMI tells about how the mortgage loan passed from one owner to another differs from the narrative that emerges from the records of the New York court in which the deficiency judgment was entered. Before this court, PAMI maintains that Midlantic owned the loan until June 8, 1994, when ownership of the loan passed to ALI. It contends that ALI's assignment of the loan to PAMI was effective the same day. But in its written affirmation re-

questing the deficiency judgment in state court, PAMI represented that Midlantic assigned the loan directly to PAMI on September 28, 1994.

This representation seems to have been the basis of PAMI's claim to be substituted as the proper plaintiff in the deficiency judgment action. Yet this representation clearly contradicts PAMI's current position. If it is true, as the district court found and as PAMI maintained on appeal, that ALI held the loan as of June 8, 1994, then Midlantic could not possibly have assigned the loan to PAMI later, on September 28, because by that time Midlantic no longer owned the loan.

It could follow from these facts that PAMI had been wrongly permitted to collect the deficiency judgment. Alternatively, if PAMI's representations to the state court were correct, ALI could not have assigned the loan to PAMI on June 8, because Midlantic rather than ALI owned the loan on that date. In sum, the records of the deficiency judgment are not compatible with PAMI's theory of the case. Thus, even if arguments from the deficiency judgment were properly before us, they would not support PAMI's current position.[3]

The district court concluded that the evidence did not support a finding that PAMI had been in exclusive control of the loan between June 8 and August 7, 1995. We agree. Without such a showing, PAMI cannot maintain that it came into possession of the loan before that loan was extinguished on June 23. And if it did not own the loan, it has no claim under the insurance policy issued on that loan.

The judgment of the district court is affirmed.

3. It is possible, of course, that those records standing alone would support an alternative theory under which PAMI was a proper claimant on the title insurance policy by virtue of an assignment of the loan directly from Midlantic. PAMI, however, has never raised any such contention either in the district court or on this appeal. And the evidence and argument PAMI has in fact relied upon clearly contradict that theory.