United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 18, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

─────────────────────

No. 02-31134
SUMMARY CALENDAR

─────────────────────

QUANTAM VARDE ASSET FUND LLC

Plaintiff - Appellee

v.

TIM TYLER ZUFFLE; Et Al

Defendants

TIM TYLER ZUFLE; DIANE REED ZUFLE

Defendants - Appellants

─────────────────────────────────────────────────────────────

On Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans Division
(90-CV-2058)

─────────────────────────────────────────────────────────────

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

In this appeal we are asked to review a district court's decision granting summary

judgment in favor of Quantum Varde Asset Fund, LLC ("Quantum"), on its motion to revive a

judgment against Tim Tyler Zufle and Diane Reed Zufle. For the following reasons, we affirm the

─────────────

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

-1-

district court's decision.

## I. FACTUAL & PROCEDURAL BACKGROUND

In December of 1998, Silent Partner, Inc. ("SPI"), obtained two loans from Bankers Trust of Louisiana, N.A. The loans were, in principal, for $282,000.00 and $100,500.00. Appellants Tim Tyler Zufle and Diane Reed Zufle endorsed promissory notes for the loans, binding themselves, in solido, with SPI for the repayment of the financial obligations.

Not unlike many of its temporal counterparts, the Louisiana bank failed and was placed into receivership. Thereafter, the Federal Deposit Insurance Corporation ("FDIC") was appointed liquidator, and when the borrower defaulted on the loan, the FDIC brought suit on the notes. The parties entered into a consent judgment ("1991 Judgment" or "Judgment") before the case was tried, which resulted in judgment being entered in favor of the FDIC, and against the Zufles, for the amount allegedly due on one of the two notes, which equaled $227,820.00, plus accrued interest of $36,616.53, plus subsequently accruing interest.[2]

According to the Appellee, the FDIC assigned the 1991 Judgment to the Reliant Group ("Reliant") in June of 1997. Appellee further alleges that in November of 1998, it was assigned Reliant's interest in the Judgment. On May 17, 2000, Quantum filed a motion to be substituted as party plaintiff in order to enforce the Judgment. That motion was granted by the district court.

On February 16, 2001, Quantum filed suit in the district court to revive the Judgment. Although Mr. Zufle was served, Quantum could not locate Mrs. Zufle for service. It was later established that the Zufles had divorced and that Mrs. Zufle had left the state.

---

[2] Tim Zufle had been the Chief Executive Officer of SPI, which was not a party to the consent judgment because it had declared bankruptcy.

After Mr. Zufle filed an answer, Quantum moved for summary judgment. Mr. Zufle opposed the motion on the grounds that the judgment had prescribed, or, alternatively, that Quantum did not have the legal right to recover the judgment because it had not acquired anything more than a promissory note. Judge Sear granted Quantum's motion for summary judgment and revived the 1991 Judgment, finding that, based on the language of the transfer and assignment documents, the FDIC had assigned its interest in the 1991 Judgment to Reliant, and that Reliant had subsequently assigned that same Judgment interest to Quantum.

Mr. Zuffle then attempted to appeal the district court's decision to this Court. However, that appeal was dismissed for lack of jurisdiction, given that judgment had not yet been rendered against Mrs. Zufle.

At around the same time, Mrs. Zufle was located in Texas. After being served, Mrs. Zufle filed a motion to dismiss, raising essentially the same defenses as had her ex-husband. After the motion was denied, Mrs. Zufle filed her answer and Quantum moved for summary judgment. The matter was transferred to Judge Sarah Vance, who granted Quantum's motion and entered a final judgment which revived the 1991 Judgment as to both defendants, who have since filed timely notice of their appeal.

## II. DISCUSSION

On appeal, Appellants argue that a clear and unambiguous interpretation of the relevant documents establishes that the 1991 Judgment was never transferred from its original holder, the FDIC. As a result, the Appellants aver that Quantum did not have standing to revive the 1991 Judgment. In addition, because the ten-year period for reviving a judgment under Louisiana law has now expired, Appellants claim that any further attempt to revive the judgment should be

barred.[3]

A. Standard of Review

We review a grant of summary judgment *de novo*, applying the same standards as the district court. *Performance Autoplex II Ltd. v. Mid-Continent Casualty Co.*, 322 F.3d 847, 853 (5th Cir. 2003). Summary judgment should be granted if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *Id.*

Appellants did not offer any summary judgment evidence of their own in response to Quantum's motion. Rather, their position was –and continues to be– that the documents relating to the alleged transfer of the 1991 Judgment speak for themselves, and that said documents demonstrate that Quantum was not assigned any interest in the 1991 Judgment. Resolution of this appeal therefore turns on whether or not the summary judgment evidence submitted by Quantum demonstrates that it was the owner of the 1991 Judgment sought to be revived.

B. Applicability of New York Law

The 1997 Assignment and Bill of Sale between the FDIC and Reliant expressly provides that it shall be governed by and construed in accordance with New York law. The district court correctly determined, and the parties agree, that New York law will govern the interpretation of

---

[3] The district court found, and we agree, that Quantum filed its complaint before the judgment prescribed. *See* LA. CIV. CODE ANN. art. 3501 (West 2002); LA. CODE CIV. PROC. ANN. art. 2031 (West 2002). Thus, Louisiana law regarding the prescription of judgments would only be pertinent to this appeal if, for some reason, it is determined that Quantum was not the proper party to attempt to revive the 1991 Judgment. *See* LA. CODE CIV. PROC. ANN. art. 2031 (West 2002)(requiring that a party have an interest in the judgment at issue in order to bring an action to revive it). For the reasons set out in the following portions of this opinion, we have determined that Quantum was an "interested party" in relation to the 1991 Judgment, and, therefore, the application of Louisiana law pertaining to the prescription of judgments is of no consequence.

the 1997 documents. *See* N.Y. Oblig. Law § 5-1401. Because the resolution of this appeal hinges, for the most part, on the proper interpretation of the 1997 transfer documents, when appropriate we will turn to the laws of New York for guidance.

C. Appellants' Arguments Regarding the Alleged Transfer of the 1991 Judgment

The crux of the Appellants' appeal is their argument that the documents presented by Quantum show that the attempted initial transfer of the 1991 Judgment from the FDIC to Reliant was unsuccessful, and that, therefore, Reliant could not and did not transfer the Judgment to its alleged successor, Quantum.

As previously noted, the initial –alleged– transfer of the 1991 Judgment took place in 1997. The 1997 Assignment and Bill of Sale identifies and references the partnership agreement used to create Reliant, and incorporates certain definitions found in that earlier agreement. Exhibit "A" of the 1997 Assignment and Bill of Sale between the FDIC and Reliant refers to an asset labeled "Silent Partner, Inc." The book value of the asset is listed as $264,436.70.

Appellants argue that, because the documents detailing the transfer of various assets from the FDIC to Reliant refer only to "Silent Partner, Inc.," all that was intended to be transferred was the underlying promissory note and not the Judgment. In support of this argument, Appellants point out that there is no judgment against Silent Partner, Inc. –because it was in bankruptcy– and further note that there is no mention of either the Zufles or the 1991 Judgment in the 1997 Agreement. In other words, Appellants allege that the only thing transferred from the FDIC to Reliant was an interest in a now defunct promissory note.

Quantum counters that the FDIC's assignment of the Judgment to Reliant, and Reliant's subsequent assignment of the same to Quantum, were both properly documented. More

specifically, Quantum asserts that the transfer documents reflect the parties' intent to transfer the "asset" known as the "Silent Partner" asset, which included the promissory note executed by Silent Partner and the consent judgment rendered against the Zufles based on that note. Put another way, Quantum's position is that use of the term "Silent Partner" when referring to the asset at issue was merely a label for the bundle of interests related to the promissory note, which included the interest in the 1991 Judgment.

(1.) <u>The 1997 Transaction</u>. According to the Assignment and Bill of Sale between the FDIC and Reliant, the 1997 transaction included the transfer of "all of the Seller's right, title and interest, if any, in and to the 'JDC' and 'Small Balance Assets' (as such terms are defined in the Contribution Agreement) listed on Exhibit A attached hereto."

The Contribution Agreement incorporates the definitions of the terms "JDC" and "Small Balance Assets" used in the Agreement of Limited Partnership ("Partnership Agreement"), which created Reliant. The Partnership Agreement defines the term "JDC" as, "Collectively, Judgments, Deficiencies and Charge Offs." Furthermore, the term "Judgment" is defined as, "The right to receive a sum of money in payment of an obligation created by a court order, writ or decree which is evidenced by an official certificate of such court." The term "Assets" means "Any JDCs and Small-Balance Assets which are to be contributed to the Partnership by the Limited Partner on the Closing Date pursuant to the Contribution Agreement and any JDCs and Small-Balance Assets which may be contributed to the Partnership by the Limited Partner subsequent to the Closing Date pursuant to the Contribution Agreement." Additionally, Small-Balance Assets" are "The right to receive from any Person a sum of money in payment of an obligation of such Person (whether secured in whole or in part by collateral other than real estate or unsecured), which right

-6-

may not be characterized as a Judgment, Deficiency or Charge-off."

The district court found that the asset at issue fell within the "JDC" category. The district court also determined that the reference to "Silent Partner" in the 1997 Agreement was not intended to limit the nature of the transfer from the FDIC to Reliant, but rather was "merely a descriptive term used to describe the asset, which by 1997 unequivocally consisted of a judgment against the endorsers of the original Silent Partner note." *F.D.I.C. v. Zufle*, 2001 WL 1602139, at *2 (E.D.La. Dec 13, 2001). We agree with the district court's conclusion.

(2.) <u>New York Law</u>. New York law pertaining to the interpretation of contracts is similar to that of most states, including Louisiana. One New York court has commented that:

> The interpretation of a written agreement is within the province of the court and, if the language of the agreement is free from ambiguity, its meaning may be determined as a matter of law on the basis of the writing alone without resort to extrinsic evidence.

*Hickman v. Saunders*, 228 A.D.2d 559, 560, 645 N.Y.S.2d 49, 50 (N.Y. Sup. Ct. 1996). New York law also clarifies that "[a] contract is not deemed ambiguous unless 'it is reasonably susceptible [to] more than one interpretation, and a court makes this determination by reference to the contract alone.'" *Banque Arabe v. Maryland National Bank*, 57 F.3d 146, 152 (2d Cir. 1995)(quoting *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990)).

Although no particular form or language is required to create an assignment under New York law, there is a need for some "act or words" that manifest an intent to assign. *Property Asset Management, Inc. v. Chicago Title Insurance Co., Inc.*, 173 F.3d 84, 87 (2d Cir. 1999); *see also Miller v. Wells Fargo Bank International Corp.*, 540 F.2d 548, 557 (2d Cir. 1976)("Any act or words are sufficient which show an intention of transferring the chose in action to the assignee, when the assignor is divested of all control and right to cause of action and the assignee is entitled

-7-

to control it and receive its fruits").

For purposes of determining whether the contract is ambiguous, we ignore –for the moment– the fact that each party espouses a different interpretation of its terms and look solely to the contract itself.

According to the terms of the 1997 Assignment and Bill of Sale, the FDIC transferred to Reliant, "all of the [FDIC's] right, title and interest, if any, in and to the 'JDC' and 'Small Balance Assets' . . . listed on Exhibit A." The chosen language would seem, clearly, to suggest an intention to transfer any and all interests related to a given asset. As previously mentioned, the relevant "asset" referenced in the 1997 Agreement is listed under the asset name "Silent Partner Inc" and is listed as having a book value of $ 264,436.53.[4]

As the district court noted, the agreement between the FDIC and Reliant does not expressly limit itself to the promissory note, nor does it contain an express reservation of the 1991 Judgment in favor of the FDIC. In the case of *In re 24-52 44th Street, Long Island City*, 26 N.Y.S. 2d 265 (N.Y. Sup. Ct. 1941), the assignees of a bond sought to collect from the bond's guarantors. The guarantors argued that when the bond had been assigned without an express statement that the guarantee was included in the assignment, the bond became divested of the guarantee. The court disagreed, noting that under New York law, the assignment of a principal obligation generally carries with it all related rights, even those not referred to in the assignment. The assignees' argument was further strengthened by the fact that the assignor had not reserved its rights against the guarantor.

According to New York law, any act or words are sufficient to accomplish an assignment

_____

[4] We note that the book value of the asset is the same amount as the 1991 Judgment.

-8-

when the assignor is divested of all control and right to a cause of action and the assignee is entitled to control it and receive its fruits. *Miller*, 540 F.2d at 557. We find that the 1997 transfer documents are unambiguous and demonstrate a clear intent to divest the FDIC of any control or rights related to the Silent Partner asset in favor of Reliant.

Furthermore, because the FDIC's intent, as made manifest by the contractual language, was to transfer any and all interests related to SPI, the 1991 Judgment would seem to have necessarily been included in the transfer. The FDIC clearly owned the 1991 Judgment at the time of the transfer, and if, as seems clear by the contract's terms, the FDIC intended to divest itself of all control and interest in the right to its cause of action, then the assignment to Reliant was proper and enforceable against the Zufles. *See Miller*, 540 F.2d at 557; *Coffey v. Roe*, 277 N.Y.S. 2d 743, 52 Misc. 2d 1003 (N.Y. Sup. Ct. 1967).

Given the preceding discussion, we find that the 1997 transfer documents are unambiguous and manifest an intent to assign all of the FDIC's interests and rights related to the SPI asset, including the right to enforce the 1991 Judgment, to Reliant. *See Property Asset Management, Inc.*, 173 F.3d at 87; *In re 24-52 44th Street*, 26 N.Y.S. 2d at 270. We add that our decision is also consistent with the general trend in New York toward adopting principles of free assignability of claims. *Banque Arabe*, 57 F.3d at 153.

(3.) The 1998 Transaction. Appellants' main contention, as previously noted, is that Quantum could have, at best, purchased from Reliant only what Reliant had purchased from the FDIC. Although we have rejected appellants' argument that the only interest purchased by Reliant was a promissory note, for the sake of clarity we turn, briefly, to examine the nature of the 1998 transfer between Reliant and Quantum.

In their briefs, Appellants suggest that the 1998 transfer documents refer to a "judgment" against SPI, which, according to appellants, never existed. While it is true, as far as this Court can tell, that no judgment against SPI exists, any argument by Appellants that the transfer from Reliant to Quantum did not entail the 1991 Judgment due to the language used in the 1998 transfer documents is without merit.

According to the Bill of Sale and Assignment of Assets, the 1998 transaction assigned "all of [Reliant's] right, title and interest in and to each of the Assets identified on the computer disk labeled Exhibit A." The record includes a print out from the disk, which references an asset labeled "Silent Partner, Inc." The transfer balance is listed as $264,436.53, which is both the amount of the 1991 Judgment as well as the value attributed to the asset referenced in the initial transfer from the FDIC to Reliant. Furthermore, the print out lists the asset "type" as a "judgment." To suggest, as appellants appear to do, that this reference to a judgment in the exact amount as the 1991 Judgment refers to some non-existent judgment against SPI is untenable –particularly given our conclusion that the 1997 transaction included the 1991 Judgment.[5]

(4.) Propriety of Affidavits Showing the Parties' Intent. Appellants also argue that affidavits from representatives of the FDIC and Quantum, which were submitted in an attempt to clarify the parties' "intent," were improper, and should not have been relied upon by the district court. *See Allen v. West-Point Pepperwill, Inc.*, 933 F. Supp. 261 (S.D.N.Y. 1996), *reversed on other grounds*, *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133 (2d Cir. 2000).

---

[5] Although our determination regarding the intent of the parties to the 1997 transaction was based on the language of the documents and New York law, we note, only in passing, that use of the label "judgment" to refer to the asset in the 1998 transaction seems to strengthen the appellee's claim –and our conclusion– that the FDIC and Reliant understood the 1997 transaction to include the 1991 Judgment.

According to appellants, because the transfer documents were unambiguous, no extrinsic evidence should have been allowed to clarify the parties' contractual intent. Because we have determined that, standing alone, the transfer documents indicated intent to transfer the 1991 Judgment, a determination regarding the propriety of the affidavits is unnecessary. Furthermore, it should be noted that the district court's decision did not depend on said extrinsic evidence.

## III. CONCLUSION

For the foregoing reasons, the decision of the district court rendering summary judgment in favor of Quantum and reviving the 1991 Judgment as to Appellants Tim Tyler Zufle and Diane Reed Zufle is AFFIRMED.